UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE USE OF A PEN REGISTER AND TRAP-AND-TRACE DEVICE WITH RESPECT TO A PARTICULAR INTERNET CHAT GROUP | Docket no. 1:21-mc- <br><br> **FILED UNDER SEAL – LEVEL II** |

## APPLICATION

AUSA John S. Davis hereby affirms, under penalty of perjury, as follows:

1. I am an Assistant United States Attorney in the office of John Farley, Acting United States Attorney for the District of New Hampshire, and I am familiar with this matter.

2. The Government is seeking an order pursuant to 18 U.S.C. § 3123 authorizing the use of a pen register and trap-and-trace device (the "Requested Pen-Trap") for a period of 60 days following the date of this order.

3. The Government is seeking the Requested Pen-Trap in connection with a criminal investigation conducted by the Federal Bureau of Investigation (the "Investigating Agency") of Telegram user "UncLe MiLkies" and others known and unknown (the "Target Subjects"), in connection with possible violations of 18 U.S.C. §§ 2339A, 2339B, 842(p), and 371.

### Certification and Request

4. Terrorists, those who support terrorism, and those who share information about how to commit acts of violence, including instructions on how to make and use explosives, frequently use the Internet to, among other things, communicate with one another, share propaganda, disseminate training and planning material, and plan acts of violence. Increasingly, those individuals have turned to platforms that help to obscure their identities and locations. Encrypted messaging applications that do not store message contact, cannot be intercepted,

and/or are unresponsive to U.S. legal process help to obscure these individuals' identities and allow them to evade law enforcement detection.

5. Certain encrypted messaging applications allow users to create and join chat groups with particular themes. For example, there are chat groups devoted to terrorist organizations, like al Qaeda, white supremacist groups, and other groups known for violence and espousing hateful ideologies. Members in these groups often discuss their views and share links with one another to videos, images, and other forms of propaganda.

6. In order to identify the members of some of these messaging application chat groups, the Investigative Agency has developed a tool (the "Tool") that will allow it to capture certain non-content information of any individual who clicks a particular link, as described in detail below in paragraphs 9 through 13.

7. Based on my training and experience, I know that when an Internet user accesses a website, the Internet user's web browser transmits certain information to the website's webserver. The transmitted information includes (1) the IP address assigned to the electronic device at the time the electronic device accesses the website, (2) the referrer, and (3) the user-agent string. The "referrer" is the location from which the electronic device accessed the URL (for example, a chat group or a particular website). The user-agent string is a string of text that identifies an electronic device's browser and operating system. The IP address is necessary for the webserver to determine where to send the computer data the electronic device is accessing.[1]

---

[1] In addition, any time an electronic device accesses a website, the webserver for that site must place text files containing computer code on the electronic device. This is a piece of data that does not collect information from the electronic device. It is a native function of the Internet and occurs any time an electronic device communicates with a webpage on the Internet.

8. The Tool will assist in identifying and locating the Target Devices and their user(s) by capturing the same limited, non-content information that those devices typically send to third-party webservers when accessing those webservers' websites: the Target Devices' IP addresses, referrers, and user-agent strings (the "Target Information").

9. To deploy the Tool, the Investigative Agency must first select an existing URL on the Internet (the "Target URL"). The Investigative Agency must then create a secondary URL with a shorter name (the "Shortened URL"), which, if accessed, will route a Target Device to the Target URL. When a Target Device accesses the Shortened URL, the Tool will route the same information that the Target Device sends to the Target URL to the Investigative Agency. As explained above, this limited, non-content information (i.e., the Target Information) includes:

    a. the IP address used to initiate the connection;

    b. the referrer;

    c. the date and time of the connection; and

    d. the user-agent string.

The user of a Target Device accessing the Shortened URL will be unable to see that the device's information is being routed to the Investigative Agency. From the user's perspective, accessing the Shortened URL will route the Target Device to the Target URL, just as if the user had accessed the Target URL directly.

10. This technique will not deny Target Devices' users access to any data or otherwise impair the devices' functionality. The Target Devices will transmit the Target Information described above only at the time the Target Devices click the Shortened URL.

11. To avoid collecting the Target Information from individuals unrelated to this investigation, the Investigative Agency has developed and implemented a mechanism to ensure

that it does not view or maintain data transmitted from individuals outside of the target chat groups. Due to native functionality of the Internet, the Investigative Agency will necessarily collect IP addresses and user-agent strings from any Internet user who accesses the Shortened URL. However, the data from Internet users who select the Shortened URL from outside of one of the target chat groups will automatically be segregated and manually deleted. Forwarding or reposting the Shortened URL outside of the target chat group therefore will not result in the collection of data from devices other than the Target Devices.

12. The Government hereby requests authorization to post the Shortened URL in the private Telegram chat group called "Poland or Belarus: THE Moral Dilemma Squad 🙏" as of November 26, 2021, even if the name of the chat changes. This Telegram group is described as containing members who are racially motivated violent extremists who adhere to white supremacist ideology. Topics of conversation include preparing for the Boogaloo or the ultimate collapse of civilization, creating illegal 3D weapons, and Christian Ideology. There are frequently statements made of an anti-Semitic nature and other threatening language toward minorities, Jews, and government officials.

13. Additionally, the Government hereby requests authorization to post the Shortened URL in the private Telegram group called "Northeast survival posse" as of November 26, 2021, even if the name of the chat changes. This Telegram group is described as containing members who are racially motivated violent extremists who adhere to white supremacist ideology. Topics of conversation include preparing for the Boogaloo or ultimate collapse of civilization and Christian Ideology. There are frequently statements made of an anti-Semitic nature and other threatening language toward minorities and Jews. This group is solely for those alleging to be in New York or New England.

14.     Subject to exceptions not relevant here, neither a "pen register" nor a "trap and trace device" may be used without Court authorization. 18 U.S.C. § 3121(a). A "pen register" is "a . . . process which records . . . routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a . . . process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4). The "process" used by the Tool arguably meets the definitions of both a "pen register" and a "trap and trace device." Accordingly, the Government makes the instant application.

15.     In the conventional pen register/trap and trace context, the order ultimately entered by the Court often includes the name of the person associated with the communications device from which information is sought as well as the location of the relevant device.[2] In the context of the instant application, that is not possible.

16.     In this circumstance, the Government will go beyond the law's requirements and commit to reporting to the Court (the "Report") at the end of every 30-day period after the Court authorizes the attached Order. The Report will include a description of how many IP addresses have been collected, and from which chat groups.

17.     I am familiar with the facts of this matter, including the information set out above, from my discussions with an agent from the Investigative Agency. Based on those discussions, I

---

[2] When not available, including such information in the order is not legally necessary. *See* 18 U.S.C. § 3132(b)(1) (order must specify "the identity, if known, of the person . . . in whose name is listed the . . . facility;" order must specify "if known, the location of the . . . facility).

hereby certify, pursuant to Section 3123(a)(1), that the information likely to be obtained from the Requested Pen-Trap is relevant to the Investigating Agency's ongoing criminal investigation.

18. Accordingly, the Government requests that the Court enter an Order authorizing the collection of the Target Information (as defined above in paragraphs 8 through 9) for a period of 60 days, in the circumstances described in paragraphs 9 through 13, and subject to the reporting obligations specified in paragraph 15.

19. The Government further requests, pursuant to Section 3123(d), that the Clerk of Court be directed to seal the Order (and this Application) until further order of this Court, except that copies may be retained by the United States Attorney's Office and the Investigating Agency.

The foregoing is affirmed under the penalties of perjury, pursuant to 28 U.S.C. § 1746.

Respectfully submitted,

JOHN J. FARLEY
Acting United States Attorney

Dated: December 21, 2021

/s/ John S. Davis
John S. Davis
Assistant United States Attorney
District of New Hampshire
John.davis8@usdoj.gov